1  KRISTIN A. LINSLEY, SBN 154148
   klinsley@gibsondunn.com
2  ROSEMARIE T. RING, SBN 220769
   rring@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street, Suite 3000
4  San Francisco, CA 94105-0921
   Telephone: 415.393.8200
5  Facsimile:  415.393.8306

6  PERLETTE MICHÈLE JURA, SBN 242332
   pjura@gibsondunn.com
7  BRADLEY HAMBURGER, SBN 266916
   bhamburger@gibsondunn.com
8  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
9  Los Angeles, CA 90071-3197
   Telephone: 213.229.7000
10 Facsimile:  213.229.7520

11 Attorneys for Defendant META PLATFORMS, INC.
   (f/k/a Facebook, Inc.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>META PLATFORMS, INC. (f/k/a Facebook, Inc.), a Delaware corporation,<br><br>          Defendant. | Case No. 3:22-cv-00051<br><br>**NOTICE BY DEFENDANT META PLATFORMS, INC. OF REMOVAL OF CLASS ACTION**<br><br>[Removal from the Superior Court of California, County of San Mateo, Case No. 21-CIV-06465]<br><br>Action Filed:   December 6, 2021 |

TO THE CLERK OF THE ABOVE-TITLED COURT AND TO PLAINTIFF AND HER COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, and in accordance with 28 U.S.C. §§ 1331, 1332, 1367, and 1711, Defendant Meta Platforms, Inc. ("Meta" or "Defendant") hereby removes this action—with reservation of all defenses and rights—from the Superior Court of the State of California for the County of San Mateo, Case No. 21-CIV-06465, to the United States District Court for the Northern District of California, San Francisco Division. Removal is proper on the following grounds:

## I. TIMELINESS OF REMOVAL

1. Plaintiff Jane Doe filed a Class Action Complaint on behalf of a putative class against Meta on December 6, 2021, in San Mateo County Superior Court. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Complaint, Civil Case Cover Sheet, Summons, Notice of Assignment, Case Management Order #1, and Order of Recusal and Affidavit of Mailing are attached as Exhibits A–F to the concurrently filed Declaration of Rosemarie T. Ring. A copy of the case docket, current as of January 4, 2022, is attached as Exhibit G.

2. Plaintiff served Meta, through Meta's agent for service of process, Corporation Service Company, with the Summons and Complaint on December 7, 2021. *See* Ring Decl., Ex. H. This notice of removal is therefore timely pursuant to 28 U.S.C. § 1446(b) because it is filed within 30 days after service was completed. *See* 28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a)(1).

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS AND GROUNDS FOR REMOVAL

3. Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against Meta under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

4. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under a state statute or rule—namely, California Code of Civil Procedure section 382—authorizing an action to be brought by one or more representative persons as a class action. *See id.* § 1332(d)(1)(B); *see also* Ring Decl., Ex. A ("Compl.") ¶ 159.

5. Plaintiff alleges in the Complaint that she "seeks to represent the following proposed Class pursuant to California Code of Civil Procedure § 382," where the class is defined as "[a]ll Rohingya who left Burma (Myanmar) on or after June 1, 2012, and arrived in the United States under refugee status, or who sought asylum protection, and now reside in the United States." Compl. ¶ 159.

6. Plaintiff's Complaint alleges tort violations under theories of strict product liability and negligence. *See* Compl. ¶¶ 165–81. Plaintiff also seeks a declaration that Meta "is strictly liable for defects . . . in its algorithm and system" and "acted negligently," and requests "compensatory damages for wrongful death, personal injury, pain and suffering, emotional distress, and loss of property, in the amount of at least $150 billion," "punitive damages," and "litigation expenses and attorneys' fees." *Id.* at 70.

7. Under CAFA, federal courts have original jurisdiction over class actions where (1) the amount in controversy exceeds $5 million in the aggregate for the entire class, exclusive of interest and costs; (2) the putative class action contains at least 100 members; and (3) any member of the putative class is a citizen of a State different from that of any defendant, or any member of the putative class is a citizen or subject of a foreign state and any defendant is a citizen of a State. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(2)(B), (d)(5)(B), and (d)(6).

8. Meta denies any liability as to Plaintiff's claims and as to the claims of the putative class members, and denies that any class can be certified. Meta expressly reserves all of its rights, including, but not limited to, its right to file motions challenging the pleadings. But for purposes of meeting the jurisdictional requirements for removal only, Meta submits on a good faith basis that this action satisfies all requirements for federal jurisdiction under CAFA because, as set forth below, Plaintiff's allegations put in controversy more than $5 million in the aggregate for the entire class, exclusive of interest and costs; the allegations in the Complaint identify a putative class of more than 100 members; and there is the minimum diversity of citizenship required under CAFA. *See* 28 U.S.C. § 1332(d)(2), (d)(5)(B), and (d)(6).

**A.    The Amount Placed In Controversy Exceeds $5 Million**

9. Although Meta denies that Plaintiff's claims have any merit and disputes that Plaintiff is entitled to any of the sums sought in the Complaint, Meta avers, for the purposes of meeting the

jurisdictional requirements for removal only, that Plaintiff's requested monetary recovery exceeds $5 million.

10. Plaintiff's allegations—if accepted—would place in controversy more than $5 million, exclusive of interest and costs. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) ("In determining the amount [in controversy], we first look to the complaint."). In particular, Plaintiff's complaint requests "compensatory damages for wrongful death, personal injury, pain and suffering, and loss of property, in the amount of at least $150 billion." Compl. at 70; *see Lewis*, 627 F.3d at 399 ("Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938))).

11. Even without considering punitive damages and attorneys' fees, this action far surpasses the jurisdictional minimum amount in controversy based on the request for a specific sum of compensatory damages for the alleged harms. *See Lewis*, 627 F.3d at 401 ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." (quotation marks and citation omitted)).

### B. The Putative Class Consists Of More Than 100 Members

12. Plaintiff's putative class encompasses "[a]ll Rohingya who left Burma (Myanmar) on or after June 1, 2012, and arrived in the United States under refugee status, or who sought asylum protection, and now reside in the United States." Compl. ¶ 159. Plaintiff's Complaint specifically alleges that "[a]t least 10,000 members of the Class reside in the United States." *Id.* ¶ 160. Thus, while Meta denies that any class can be certified, the proposed class plainly consists of more than 100 members based on the Complaint's allegations. *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (holding that numerosity requirement was met when the complaint referred to "'hundreds of affected consumers'" in the class).

### C. Minimal Diversity Exists Between The Putative Class And Meta

13. "Under CAFA there is sufficient diversity to establish federal diversity jurisdiction so long as one class member has citizenship diverse from that of one defendant." *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1276 (9th Cir. 2017). Thus, the minimal diversity of citizenship

requirement of CAFA is met if the plaintiff or "any member" of the putative class is either "a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A), or "a citizen or subject of a foreign state and any defendant is a citizen of a State," *id.* § 1332(d)(2)(B). Plaintiff's putative class meets the minimal diversity requirement under either standard.

14. Plaintiff alleges that Meta is "a corporation organized and existing under the laws of the State of Delaware, with its principal place of business" in "Menlo Park, California." Compl. ¶ 31. As such, Meta is a citizen of Delaware and California. 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."); *see Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012) ("[A] corporation's principal place of business 'refer[s] to the place where a corporation's officers direct, control, and coordinate the corporation's activities.'" (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010))).

15. Meta alleges that the putative class—purporting to encompass at least 10,000 Rohingya who left Burma and now reside in the United States, *see* Compl. ¶¶ 159–60—includes people who are United States citizens and domiciled in states other than California and Delaware. *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986) ("To demonstrate citizenship for diversity purposes a party must (a) be a citizen of the United States, and (b) be domiciled in a state of the United States."). A person's domicile is the place where he or she has "established a fixed habitation or abode in a particular place" with intent "to remain there permanently or indefinitely." *Id.* at 749–50 (quotation marks and citation omitted).

16. Plaintiff's putative class covers all Rohingya (1) "who left Burma (Myanmar) on or after June 1, 2012," (2) "arrived in the United States under refugee status, or who sought asylum protection," and (3) "now reside in the United States." Compl. ¶ 159.

17. Meta alleges, for the purposes of removal, that at least one member of the putative class has naturalized as a United States citizen and established a domicile in a state other than California or Delaware. The Complaint ties class membership to current residence in the United States for those who have, or at some point had, refugee or asylum status. Compl. ¶ 159. Persons who arrived as refugees or obtained asylum can apply for United States citizenship after five years of

Gibson, Dunn & Crutcher LLP

continuous residence as a lawful permanent resident. 8 U.S.C. § 1427(a); 8 C.F.R. § 316.2(a); *see Eche v. Holder*, 694 F.3d 1026, 1027 (9th Cir. 2012). Statistics from the Department of Homeland Security ("DHS") show that from 2013 to 2016, 49,582 persons who were born in Burma obtained lawful permanent resident status—and therefore would have satisfied the five-year residency requirement to be eligible for citizenship. DHS, "Persons Obtaining Lawful Permanent Resident Status by Region and Country of Birth," *Yearbook of Immigration Statistics 2015* (Apr. 6, 2016), https://www.dhs.gov/immigration-statistics/yearbook/2015/table3; DHS, "Persons Obtaining Lawful Permanent Resident Status by Region and Country of Birth," Yearbook of Immigration Statistics 2016 (May 16, 2017), https://www.dhs.gov/immigration-statistics/yearbook/2016/table3.

18.     In 2019 alone, DHS reported that 11,674 people born in Burma became naturalized United States citizens. DHS, "Naturalizations 2019 Supplementary Tables," *Yearbook of Immigration Statistics 2019* (Apr. 30, 2021), https://www.dhs.gov/immigration-statistics/yearbook/2019. Of those 11,674 people, fewer than 4% resided in California or Delaware. *See id.* These statistics, which cover only a portion of the class period, corroborate public reports about Rohingya who have left Burma, naturalized as United States citizens, and established fixed homes in a state other than California or Delaware. For example, "some 1,600 Rohingya refugees" have settled in Chicago "over the past decade," and the Rohingya Cultural Center, established in Chicago three years ago, "offers citizenship classes" as preparation for "naturalization interviews." Tania Karas, *What It's Like to Become a US Citizen After a Lifetime of Statelessness*, The World (Sept. 18, 2019), https://theworld.org/stories/2019-09-18/what-it-s-become-us-citizen-after-lifetime-statelessness ("As more and more of Rohingya approach the five-year mark of permanent residency in the US, they are becoming eligible to apply for citizenship.").

19.     Meta also alleges, for purposes of removal, that at least one member of the putative class of thousands of Rohingya is a citizen of Burma and accordingly is "a citizen or subject of a foreign state" within the meaning of 28 U.S.C. § 1332(d)(2)(B). Although Plaintiff's Complaint alleges that "'the Rohingya have gradually been denied . . . citizenship'" under Burmese law, Compl. ¶ 92, there is no allegation that every one of the thousands of putative class members lacks Burmese citizenship. Absent an allegation or proof to show that all the putative class members have been

"denationalized . . . or ceased to be a citizen and subject of" Burma, this Court may "presume[]" the putative class includes Burmese citizens. *Hauenstein v. Lynham*, 100 U.S. 483, 484 (1879); *see, e.g.*, *Sint v. INS*, 500 F.2d 120, 122 (1st Cir. 1974); *Blair Holdings Corp. v. Rubinstein*, 133 F. Supp. 496, 499 (S.D.N.Y. 1955).

20.  Thus, many "members of the class as originally described" in the Complaint have diverse citizenship from Meta. *Broadway Grill*, 856 F.3d at 1276.

## III. THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

21.  Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

(a)  this is a civil action that is a class action within the meaning of § 1332(d)(1)(B);

(b)  the amount in controversy exceeds $5 million, exclusive of interest and costs as required by § 1332(d)(2);

(c)  this action involves a putative class of more than 100 persons as required by § 1332(d)(5)(B); and

(d)  the class is minimally diverse from Meta because (i) a member of the putative class is a citizen of a state different from Meta as required by § 1332(d)(2)(A); and/or (ii) a member of the class is a citizen or subject of a foreign country while Meta is a citizen of a State as required by § 1332(d)(2)(B).

22.  For these reasons, removal of this action is proper under 28 U.S.C. §§ 1441, 1446, and 1453. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007); 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

23.  The United States District Court for the Northern District of California, San Francisco Division, is the appropriate venue for removal pursuant to 28 U.S.C. §1441(a) because it embraces the place where Plaintiff originally filed the case, the Superior Court of San Mateo County. *See* 28 U.S.C. § 84(c); *id.* § 1441(a).

24. In accordance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Meta are attached as exhibits to the concurrently filed Declaration of Rosemarie T. Ring.

25. Upon filing the Notice of Removal, Meta will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Superior Court of San Mateo County, pursuant to 28 U.S.C. § 1446(d).

26. WHEREFORE, Meta hereby removes to the Court the above action pending against it in the Superior Court of California, San Mateo County.

Dated: January 5, 2022

GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Rosemarie T. Ring*
           Rosemarie T. Ring

*Attorneys for Defendant META PLATFORMS, INC. (f/k/a Facebook, Inc.)*