| | |
|---|---|
| Rafey Balabanian (SBN 315962) | Kristin A. Linsley (SBN 154148) |
| rbalabanian@edelson.com | klinsley@gibsondunn.com |
| Yaman Salahi (SBN 288752) | Rosemarie T. Ring (SBN 220769) |
| ysalahi@edelson.com | rring@gibsondunn.com |
| EDELSON PC | GIBSON, DUNN & CRUTCHER LLP |
| 150 California Street, 18th Floor | 555 Mission Street, Suite 3000 |
| San Francisco, California 94111 | San Francisco, California 94105 |
| Tel: 415.212.9300 | Tel: 415.393.8200 |
| Fax: 415.373.9435 | Fax: 415.393.8306 |
| | |
| Jay Edelson (*pro hac vice* forthcoming) | Perlette Michèle Jura (SBN 242332) |
| jedelson@edelson.com | pjura@gibsondunn.com |
| J. Eli Wade-Scott (*pro hac vice*) | GIBSON, DUNN & CRUTCHER LLP |
| ewadescott@edelson.com | 333 South Grand Avenue |
| Michael Ovca (*pro hac vice*) | Los Angeles, California 90071 |
| movca@edelson.com | Tel: 213.229.7000 |
| EDELSON PC | Fax: 213.229.7520 |
| 350 North LaSalle, 14th Floor | |
| Chicago, Illinois 60654 | *Attorneys for Defendant Meta Platforms, Inc.* |
| Tel: 312.589.6370 | *(f/k/a Facebook, Inc.)* |
| Fax: 312.589.6378 | |

*Attorneys for Plaintiff and the Proposed Class*
*(Additional counsel in signature block)*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff,*<br>   v.<br><br>META PLATFORMS, INC. (f/k/a Facebook, Inc.), a Delaware corporation,<br><br>   *Defendant.* | Case No. 4:22-cv-00051-YGR<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

The parties respectfully submit this Joint Case Management Statement pursuant to Federal Rule of Civil Procedure 26(f) and Civil Local Rule 16-9.

**I.      JURISDICTION AND SERVICE**

Meta Platforms, Inc. ("Meta") believes the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million in the aggregate for the putative class, the putative class has at least 100 members, and there is minimal diversity between the putative class and Meta. With respect to minimal diversity,

Meta alleges that the putative class includes at least one person who is a United States citizen and domiciled in a state other than California and Delaware. *See* 28 U.S.C. § 1332(d)(2)(A). As explained in Meta's Notice of Removal, persons who arrived as refugees or obtained asylum can apply for citizenship after five years of continuous residence as a lawful permanent resident, and Department of Homeland Security statistics show that from 2013 to 2016, 49,582 persons born in Burma obtained lawful permanent resident status, and therefore were eligible for citizenship. *See* Dkt. 1 ¶ 17 (citing statistics). In 2019 alone, DHS reported that 11,674 people born in Burma became naturalized citizens—fewer than 4% of whom resided in California or Delaware. *See id.* ¶ 18 (citing statistics). Additionally, Meta alleges that at least one person in the putative class is a citizen of Burma, and accordingly a "citizen or subject of a foreign state" under 28 U.S.C. § 1332(d)(2)(B). *See id.* ¶ 19.

Plaintiff Jane Doe agrees that the amount in controversy exceeds $5 million and that the proposed class has at least 100 members, but has no factual basis to conclude that any member of the proposed class is a United States citizen domiciled in a state other than California or Delaware or that any member of the proposed class is a citizen of Burma. Under 28 U.S.C. § 1332(d)(2)(A), Defendant attempts to demonstrate that at least one class member not residing in California or Delaware has become a United States citizen, but it cites only statistics regarding *all* people whose country of origin is Burma. In contrast, Plaintiff's proposed class is limited to Rohingya refugees and asylees, not all immigrants from Burma.[1] Nor does Defendant demonstrate that any class member is a citizen or subject of Burma according to 28 U.S.C. § 1332(d)(2)(B).[2] Accordingly, Plaintiff has no factual basis to determine that Section 1332(d)(2)'s requirements for subject matter jurisdiction are satisfied.

---

[1] Rohingya Muslims are 3-4% of Burma's population, according to the CIA World Factbook. *See Burma*, CIA World Factbook, https://www.cia.gov/the-world-factbook/countries/burma/ (last modified Mar. 30, 2022).

[2] The Rohingya are considered a "stateless" people. Compl. ¶ 1. *See also* Shehman Awan, *The Statelessness Problem of the Rohingya Muslims*, 19 Wash. U. Global Stud. L. Rev. 85, 86-7 (2020). A "stateless" party is not a citizen or subject of a foreign state for purposes of alienage jurisdiction. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1092 (9th Cir. 1983).

Other than the foregoing, there are no disputes concerning personal jurisdiction or venue, and no parties remain to be served.

## II. FACTS

### A. Plaintiff's Statement

Plaintiff is a Rohingya Muslim refugee who now resides in Illinois. Compl. ¶ 31. When she was just 16 years old, her father was detained, beaten, and tortured for two weeks by the Myanmar military. *Id.* ¶ 151. Fearful that the Myanmar military would abduct, sexually assault, or kill her, she fled Burma by herself. *Id.* ¶ 153. Her parents and sisters remain in Burma, and, having been dispossessed of their homes, land, personal property, and livelihood, live in fear of further attacks by the Myanmar military or by Buddhist monks. *Id.* ¶ 155.

Unbeknownst to Plaintiff until 2021, Facebook played a material role in causing her injuries. *Id.* ¶ 158. According to the United Nations Independent International Fact-Finding Mission on Myanmar, Facebook had played a "determining role" in turning what was for decades sporadic violence into terrorism and mass genocide of the Rohingya people. *Id.* ¶¶ 1, 3, 9. Specifically, Facebook both contributed to the development and widespread dissemination of anti-Rohingya hate speech, misinformation, and incitement of violence beginning in 2011, which was a substantial factor in making Burma less safe for Plaintiff, her loved ones, and the Rohingya people, and ultimately culminating in a genocide. *Id.* ¶ 2. Indeed, one Facebook whistleblower stated that "Facebook executives were fully aware that posts ordering hits by the Myanmar government of the minority Muslim Rohingya were spreading wildly on Facebook . . . ," and that " . . . the issue of the Rohingya being targeted on Facebook was well known inside the company for years." *Id.*

Facebook did not operate in Burma as a neutral platform. Quite the contrary, Facebook knowingly created a product that it intended to incite powerful and sometimes dangerous emotions, in order to increase "engagement" (e.g., "likes," "shares," comments, views, etc.) with users and thus drive up its own profits. *Id.* ¶ 10. Facebook's own study and analysis concluded that hate and toxicity fuel its growth more effectively than mundane and quotidian topics like a user's favorite latte. *Id.*; *see also id.* ¶¶ 36-65. It thus carefully designed its

-3-

algorithms to "prioritiz[e] divisive and polarizing content, including hate speech and misinformation about targeted groups, when delivering content to users and recommending that users make new connections or join new groups." *Id.* ¶ 11.  Facebook's feedback mechanisms are designed to contribute to the proliferation of such content.  "By ensuring that more users see and respond—in the form of 'likes,' 'shares,' and comments—to such toxic content, Facebook's algorithms train users to post more hate speech and misinformation in order to garner more attention online." *Id.* ¶ 12.

It was foreseeable and known to Facebook that by prioritizing and rewarding users for posting dangerous and harmful content, recommending extremist groups, and permitting fake accounts created by autocrats to flourish on its system, Facebook would radicalize Burmese users and cause them to support or engage in dangerous or harmful conduct offline. *Id.* ¶ 21. The Facebook-fueled anti-Rohingya sentiment motivated and enabled the military government of Myanmar to engage in a campaign of ethnic cleansing against the Rohingya. *Id.* ¶ 23. Facebook's executives, including Mark Zuckerberg and Sheryl Sandberg, admitted that Facebook should and could have done more to prevent the genocide. *Id.* ¶ 25.

**B.**  **Defendant's Statement**

This case arises from atrocities committed by the Myanmar military against the Rohingya ethnic minority in Burma.  For more than half a century, the Myanmar military has used the supposed "ethnic threat to national sovereignty" allegedly posed by the Rohingya people to justify its hold on power. *Id.* ¶ 91.  And since 1989, "the Rohingya citizens of Myanmar … have been subjected to persecution based on their religious beliefs involving extrajudicial executions, torture, arbitrary detention, and other atrocities." *Id.* ¶ 92.  Beginning as early as the 1970s, hundreds of thousands of Rohingya fled the country to escape these horrendous abuses.

Plaintiff Jane Doe is a Rohingya Muslim woman who previously resided in the Rakhine State of Burma. *Id.* ¶ 150.  In 2012, Doe's father and other individuals from her village suffered anti-Rohingya violence at the hands of the Myanmar military. *Id.* ¶¶ 151–54. As a result of the Myanmar military's abhorrent actions, Plaintiff fled Burma, initially to

1  Bangladesh, and eventually to the United States. *Id.* ¶ 155.  Five years later, in August 2017,
2  the Myanmar military engaged in a "clearance operation" in the Rakhine State that resulted in
3  thousands of deaths and caused hundreds of thousands to flee. *Id.* ¶¶ 103, 106–07.

4        The complaint is a misguided effort to hold Meta legally liable for the acts of violence
5  and hateful posts of Myanmar's military.  According to the complaint, the Myanmar military
6  used Facebook as a tool to justify its campaign of violence, deterring local non-Rohingya
7  people from opposing the military's actions. *Id.* ¶ 115.  As a result, in addition to using
8  internet platforms like Facebook, the Myanmar military allegedly carried out its "hate
9  campaign" using a variety of documents, publications, statements, and audio-visual materials.
10 *Id.*

11       The events in Myanmar and the violence against the Rohingya people are tragic and
12 deplorable, but the claims asserted against Meta are time-barred, misguided, and fail as a
13 matter of law.  Meta disputes Plaintiff's allegations, which rest on misunderstandings of how
14 the Facebook platform works and misrepresentations of Meta's conduct.  As the complaint
15 acknowledges, Meta has invested heavily in people, technology, and partnerships—and has
16 taken aggressive action against Myanmar military members—to combat the spread of hateful
17 content on Facebook. *Id.* ¶¶ 140–44.

18 ### III.   LEGAL ISSUES

19       **A.**     **Plaintiff's Statement**

20       The key legal issues in this case include: (1) whether Facebook is liable under strict
21 products liability for the design and dissemination of a dangerous product causing harm to
22 Plaintiff and the proposed Class; (2) whether Facebook negligently designed its product,
23 causing harm to Plaintiff and the proposed Class; (3) whether this case may be maintained as a
24 class action under Federal Rule of Civil Procedure 23; and (4) whether the Communications
25 Decency Act, 47 U.S.C. § 230, precludes Plaintiff from pursuing her claims.

26       **B.**     **Defendant's Statement**

27       Meta denies that it has violated any laws, denies that Plaintiff has stated a claim under
28 any legal theory, and denies that Plaintiff may pursue claims on behalf of any putative class.

Meta identifies the following primary legal issues, without limitation to other legal issues that may arise if this litigation progresses:

(1) Whether Plaintiff's complaint should be dismissed as barred by the applicable two-year statute of limitations, *see* Cal. Civ. P. Code § 335.1; *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005);

(2) Whether Plaintiff's complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim as to all counts, including for the reason set forth in Defendant's Motion to Dismiss (Dkt. 22);

(3) Whether Plaintiff's complaint should be dismissed because its claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230; *see also Gonzalez v. Google, LLC*, 2 F.4th 871, 897 (9th Cir. 2021);

(4) Whether Plaintiff's complaint should be dismissed because it is preempted under the foreign affairs doctrine, *see Zschernig v. Miller*, 389 U.S. 429, 432 (1968);

(5) Whether any class may be certified under Federal Rule of Civil Procedure 23; and

(6) Additional legal issues that may be presented if the case progresses past the pleadings stage.

## IV.   MOTIONS

Defendant has filed a motion to dismiss, which is pending. *See* Dkt. 22. Per the briefing schedule entered by the Court, Plaintiff will respond to the motion on April 21, 2022, and Defendant's reply will be filed on June 6, 2022. Defendant's motion is set to be heard on June 21, 2022. *See* Dkt. 20. If the case progresses past the pleading stage, Meta anticipates filing a motion for summary judgment and/or other motions as necessary.

Plaintiff also anticipates filing the following motions: (i) a motion for class certification; (ii) a motion(s) for summary adjudication and/or summary judgment; (iii) discovery-related motions, as necessary, and (iv) pre-trial motions, including *Daubert* motions, as necessary.

## V. AMENDMENT OF PLEADINGS

### A. Plaintiff's Statement

Plaintiff does not anticipate amending the pleadings before Defendant's motion to dismiss is resolved. However, Plaintiff's investigation into this matter is ongoing, and new information continues to come to light regarding the issues in this case. This, combined with information to be obtained through discovery, may necessitate amendments in the future. Plaintiff therefore proposes that amended pleadings (if any) be filed 120 days following the start of discovery.

### B. Defendant's Statement

As noted above, Meta has filed a motion to dismiss. *See* Dkt. 22. Meta believes that dismissal of the complaint should be with prejudice, because, *inter alia*, any amendment would be futile. Meta reserves the right to assert additional claims or defenses when it files its response to the complaint should this Court deny Meta's motion to dismiss.

## VI. EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). The parties have additionally conferred with their respective counsel about the need to preserve evidence that may be relevant to Plaintiff's claim or Defendant's defenses, including the preservation of electronically stored information. To the extent it is necessary, the parties anticipate submitting a stipulated ESI Protocol and proposed protective order within 30 days of the Court's order on Defendant's motion to dismiss.

## VII. INITIAL DISCLOSURES

The parties have not yet completed their initial disclosures. If the Court does not grant Defendant's motion to dismiss, the parties agree to promptly meet and confer to discuss a schedule for the exchange of initial disclosures.

## VIII. DISCOVERY

The parties held a Rule 26(f) conference on March 18, 2022. Defendant proposed that the parties stay discovery until the Court has ruled on threshold issues raised in its pending

-7-

motion to dismiss. Plaintiff does not oppose Defendant's request for the parties to stay discovery, but reserves the right to seek the Court's leave to modify a stay for good cause.

## IX. CLASS ACTIONS

The parties' attorneys have reviewed this District's Procedural Guidance for Class Action Settlements.

### A. Plaintiff's Statement

Plaintiff seeks to represent a class under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) of "All Rohingya who left Burma (Myanmar) on or after June 1, 2012, and arrived in the United States under refugee status, or who sought asylum protection, and now reside in the United States." Compl. ¶ 159. Plaintiff maintains that the size of the class is numerous enough such that joinder would be impractical (Rule 23(a)(1)); that there are many common questions of law and fact which predominate over individualized questions (Rule 23(a)(2) and Rule 23(b)(3)); that Plaintiff's claims are typical of those of the class (Rule 23(a)(3)); that Plaintiff and her counsel are adequate representatives of the class (Rule 23(a)(4)); and that class action treatment is superior to the alternative (Rule 23(b)(3)). Plaintiff further maintains that class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Alternatively, Plaintiff will seek certification of a class pursuant to Rule 23(c)(4) with respect to particular issues.

### B. Defendant's Statement

Meta disputes that any class can be certified under Federal Rule of Civil Procedure 23 and that Plaintiff can establish a class-wide basis for monetary or equitable relief.

## X. RELATED CASES

The parties are unaware of any pending related cases in the United States.

## XI. RELIEF

### A. Plaintiff's Statement

As explained in Plaintiff's complaint, Plaintiff seeks an Order (i) certifying the proposed Class; (ii) declaring Defendant strictly liable for defects in its algorithms and system, and that Defendant acted negligently; (iii) awarding the Class compensatory damages for wrongful death, personal injury, pain and suffering, emotional distress, and loss of property; (iv) awarding Plaintiff and the Class punitive damages in an amount to be determined at trial; (v) awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees; (vi) awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and (vii) awarding such other and further relief as equity and justice may require.

### B. Defendant's Statement

Meta believes that Plaintiff is not entitled to relief from Meta and that the complaint fails to state a claim upon which relief can be granted. Meta also disputes that Plaintiff may establish a class-wide basis for awarding monetary or equitable relief. At this stage in the litigation, Meta is not in a position to describe the bases on which any alleged damages should be calculated in the event liability were established.

## XII. SETTLEMENT AND ADR

The parties filed their respective Alternative Dispute Resolution ("ADR") certifications on March 21 and March 22, 2022. *See* Dkts. 25 and 26.

The parties have discussed the possibility of settlement. Defendant has stated that settlement discussions are unlikely to be productive before the Court has resolved the pending motion to dismiss.

## XIII. MAGISTRATE JURISDICTION

Not all parties have consented to a magistrate judge for all purposes.

## XIV. OTHER REFERENCES

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

The parties are not presently aware of any issues that can be narrowed by agreement. Defendant has filed a motion to dismiss, a decision on which may narrow or eliminate issues for trial, and the parties may subsequently file motions for summary adjudication and/or summary judgment, which may also narrow or eliminate issues for trial in the future.

## XVI. EXPEDITED TRIAL PROCEDURE

The parties do not believe this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64.

## XVII. SCHEDULING

The parties respectfully submit that it is premature to set a case schedule before the Court has resolved Defendant's pending motion to dismiss. The parties propose that they submit a joint proposed case schedule, or competing proposals, at a case management conference to be held after the Court has entered an order on the motion to dismiss.

## XVIII. TRIAL

Plaintiff has requested a trial by jury of all matters that can be so tried. The expected length of trial will depend on the resolution of any motion for class certification and/or dispositive motions, and is not known at this time.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiff filed a Certificate of Interested Entities on January 25, 2022. *See* Dkt. 21. Defendant filed such certificate on January 5, 2022. *See* Dkt. 2.

## XX. PROFESSIONAL CONDUCT

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: April 4, 2022                                   Respectfully submitted,

                                                       By: */s/ Yaman Salahi*

                                                       Rafey Balabanian (SBN 315962)
                                                       rbalabanian@edelson.com

Yaman Salahi (SBN 288752)
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson (*pro hac vice* forthcoming)
jedelson@edelson.com
J. Eli Wade-Scott (*pro hac vice*)
ewadescott@edelson.com
Michael Ovca (*pro hac vice*)
movca@edelson.com
Edelson PC
350 North LaSalle, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Richard Fields (*pro hac vice* forthcoming)
fields@fieldslawpllc.com
FIELDS PLLC
1701 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006
Tel: 833.382.9816

*Attorneys for Plaintiff Jane Doe and the Proposed Class*


By: */s/ Rosemarie T. Ring*

Kristin A. Linsley (SBN 154148)
klinsley@gibsondunn.com
Rosemarie T. Ring (SBN 220769)
rring@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission St., Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Perlette Michèle Jura (SBN 242332)
pjura@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
Tel: 213.229.7000
Fax: 213.229.7520

*Attorneys for Defendant Meta Platforms, Inc. (f/k/a Facebook, Inc.)*

**FILER'S ATTESTATION**

Pursuant to Local Rule 5-1(h)(3) of the Northern District of California, I hereby certify that the content of this document is acceptable to all signatories and that I have obtained their authorization to affix their electronic signature to this document.

Dated: April 4, 2022                    By: */s/ Yaman Salahi*
                                        Yaman Salahi
                                        Attorney for Plaintiffs